UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD HAJJAR<br><br>Defendant. | Criminal No. 21cr10116<br><br>Violations:<br><br>Count One: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Count Two: Unlawful Monetary Transactions<br>(18 U.S.C. § 1957)<br><br>Count Three: Filing a False Tax Return<br>(26 U.S.C. § 7206(1))<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461)<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. The defendant, RICHARD HAJJAR ("HAJJAR"), was an individual who resided in Massachusetts. Before he was fired in or about October 2019, HAJJAR held various executive positions at Alden Shoe Company, Inc. ("Alden"), a privately owned shoe manufacturing business based in Massachusetts, including most recently as the company's Chief Financial Officer ("CFO"), vice president, and corporate secretary.

2. Bank of America, N.A. ("BOA") was a federally insured financial institution with offices located throughout the United States, including in the District of Massachusetts.

3.      Santander Bank, N.A. ("Santander") was a federally insured financial institution with offices located throughout the United States, including in the District of Massachusetts.

4.      Individual 1 was a resident of Massachusetts and California.

5.      The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering and enforcing the tax laws of the United States.

<u>The Federal Tax Requirements</u>

6.      Pursuant to the Internal Revenue Code and attendant regulations, individual taxpayers generally are required to report their income, attendant tax obligations, and, where appropriate, any claim for a refund on a U.S. Individual Income Tax Return, Form 1040, which must be filed annually with the IRS.

<u>Scheme to Defraud</u>

7.      Beginning on a date unknown, but no later than in or around 2011, and continuing through his termination in or about October 2019, HAJJAR embezzled more than $30 million from Alden, which he used to enrich himself and to buy gifts for others known to the United States Attorney, including Individual 1.

8.      As part of his scheme, beginning at least in or around 2011, HAJJAR began writing checks to himself from Alden's cash reserve account at Santander ending in 3798 (the "Santander Account") and deposited the checks in various personal bank accounts. HAJJAR did not otherwise document these unauthorized transfers. For example:

   a.   In 2011, HAJJAR wrote himself eight checks totaling $585,000.

   b.   In 2012, HAJJAR wrote himself 17 checks totaling $1,226,000.

  c. In 2013, HAJJAR wrote himself 13 checks totaling $1,000,000.

  d. On or about July 6, 2016, HAJJAR wrote himself a $900,000 check from the Santander Account. HAJJAR then exchanged the personal check for a $900,000 cashier's check that he used to contribute to the purchase of a New York City condominium for Individual 1.

9. HAJJAR also embezzled $26 million from the Santander Account by transferring the funds to a dormant Alden account held in the name of a trust (the "Trust Account"), over approximately 58 different transactions between November 1, 2013 and October 21, 2019. HAJJAR then transferred the money to his personal accounts, used it to pay personal expenses, and gave it to Individual 1. Specifically:

  a. In 2013, HAJJAR transferred approximately $1,180,000 from the Santander Account to the Trust Account over two transactions.

  b. In 2014, HAJJAR transferred approximately $4,070,000 from the Santander Account to the Trust Account over four transactions.

  c. In 2015, HAJJAR transferred approximately $7,335,000 from the Santander Account to the Trust Account over 15 transactions.

  d. In 2016, HAJJAR transferred approximately $3,220,000 from the Santander Account to the Trust Account over 11 transactions.

  e. In 2017, HAJJAR transferred approximately $3,125,000 from the Santander Account to the Trust Account over six transactions.

  f. In 2018, HAJJAR transferred $3,350,000 from the Santander Account to the Trust Account over nine transactions.

      g.      In 2019, HAJJAR transferred $3,840,000 from the Santander Account to the Trust Account over 11 transactions.

10. Between approximately 2013 and 2019, HAJJAR transferred more than $10.4 million from the Trust Account to various personal bank accounts. HAJJAR also wired more than $11.5 million to Individual 1 and an entity associated with Individual 1.

11. Between approximately 2013 and 2016, HAJJAR used nearly $4 million from the Santander Account and the Trust Account to pay off his personal American Express card, which he used to purchase or allowed Individual 1 to purchase millions of dollars' worth of luxury goods and travel, including diamond earrings for Individual 1 that cost approximately $96,000, a diamond ring that cost approximately $158,000, a diamond ring that cost approximately $83,000, earrings that cost approximately $89,000, a private flight to St. Maarten that cost more than $51,000, and a private flight to Anguilla that cost nearly $63,000.

12. On or about September 23, 2016, HAJJAR opened an $8 million line of credit for Alden at Bank of America. HAJJAR subsequently transferred funds from the line of credit, through various Alden accounts, to his personal accounts and to Individual 1.

13. HAJJAR took a number of steps to conceal his fraud scheme. For example, between 2013 and 2016, HAJJAR annually drew down a line of credit Alden maintained at Santander prior to the company's yearly financial statement review, and used the money to replenish funds he had embezzled from the Santander Account. Following the annual financial statement review, HAJJAR returned the same money to the line of credit.

14.   In addition, for each of the years HAJJAR embezzled funds from Alden, he altered Alden's year-end bank statements and provided false information to Alden's accounting firm, which prepared financial statements in reliance on HAJJAR's false representations.

### The False Tax Returns

15.   Between at least 2014 and 2019, HAJJAR retained H&R Block, Inc., a tax preparation company, to assist with the preparation of his annual income tax returns. HAJJAR failed to inform his tax preparer of the millions of dollars he embezzled from Alden and used for his personal benefit.

16.   As a result, in each of those tax years, HAJJAR caused an income tax return to be filed with the IRS—which was verified by a declaration, made under the penalties of perjury, that it was true, correct and complete—that he knew to be false insofar as it understated his income by omitting to report the money he embezzled from Alden.

   a.   For the tax year 2014, HAJJAR failed to report as income $3,300,000 he embezzled from Alden.

   b.   For the tax year 2015, HAJJAR failed to report as income $2,900,000 he embezzled from Alden.

   c.   For the tax year 2016, HAJJAR failed to report as income $2,520,000 he embezzled from Alden.

   d.   For the tax year 2017, HAJJAR failed to report as income $1,525,500 he embezzled from Alden.

   e.   For the tax year 2018, HAJJAR failed to report as income $1,769,000 he embezzled from Alden.

      f.      For the tax year 2019, HAJJAR failed to report as income $1,070,000 he embezzled from Alden.

17. As a result of HAJJAR's failure to report the proceeds of his embezzlement as income, he failed to pay approximately $5,112,822 in taxes he owed.

<u>COUNT ONE</u>
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney charges:

19. The United States Attorney re-alleges and incorporates by reference paragraphs 1-17 of this Information.

19. On or about September 28, 2016, in the District of Massachusetts and elsewhere, the defendant,

RICHARD HAJJAR,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit: an $8 million check deposited into the Alden Santander account ending in 3798 and associated wire communications.

All in violation of Title 18, United State Code, Section 1343.

## COUNT TWO
## Unlawful Monetary Transaction
## (18 U.S.C. § 1957)

The United States Attorney further charges:

20. The United States Attorney re-alleges and incorporates by reference paragraphs 1-17 of this Information.

21. On or about July 6, 2016, in the District of Massachusetts and elsewhere, the defendant,

## RICHARD HAJJAR,

knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000, specifically, the purchase of a $900,000 cashier's check, where such property was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957.

<u>COUNT THREE</u>
Filing a False Tax Return
(26 U.S.C. § 7206(1))

The United States Attorney charges:

22. The U.S. Attorney re-alleges and incorporates by reference paragraphs 1-17 of this Information.

23. On or about July 15, 2020, in the District of Massachusetts and elsewhere, the defendant,

RICHARD HAJJAR,

did willfully make and subscribe a U.S. Individual Tax return, Form 1040, for the tax year 2019, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Director, Internal Revenue Service, and which return the defendant did not believe to be true and correct as to every material matter in that he reported total income of $442,622, but failed to report as income $1,070,000 he embezzled from Alden.

All in violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

24.  Upon conviction of the offense in violation of Title 18, United States Code, Section 1343, set forth in Count One, the defendant,

RICHARD HAJJAR,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

25.  If any of the property described in Paragraph 24, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the Court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 24 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

26.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1957, set forth in Count Two, the defendant,

RICHARD HAJJAR,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

27.     If any of the property described in Paragraph 26, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 26 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

Respectfully submitted this 14th day of April 2021.

NATHANIEL R. MENDELL
Acting United States Attorney

By: _____
MACKENZIE A. QUEENIN
CAROL E. HEAD
ASSISTANT U. S. ATTORNEYS
