UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-cr-10116 |
| | ) | |
| RICHARD HAJJAR, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Over the course of at least 9 years, defendant Richard Hajjar committed an audacious fraud. To characterize his scheme as simply long-running and brazen would significantly understate the impact of his offense. Like so many other successful fraudsters, Hajjar knew his victim very well. He understood the company's vulnerabilities and he exploited them to his advantage. And he repeatedly placed himself in position that allowed him to commit and cover up his criminal acts. For all of the reasons set forth herein and to be discussed at the sentencing hearing, the government respectfully recommends the Court sentence Hajjar to 74 months in prison and 36 months of supervised release, and impose forfeiture in the amount of $27,300,552.67, restitution of $33,962,880.70[1], and a mandatory special assessment of $300. *See* Dkt 3, 17. A 74 month term of incarceration is at the high end of the parties' agreed-upon disposition in the Rule 11(c)(1)(C) plea agreement, and is sufficient but not greater than necessary to serve the goals of sentencing. *See* 18 U.S.C. § 3553(a).

---

[1] Of this restitution amount, $27,300,552.70 is due to Alden Shoe Company, Inc. ("Alden") and $6,662,328 is due to the IRS. While Alden suffered a loss of at least $30,592,337, approximately $3,291,784.33 has been repaid by Hajjar and/or third parties.

## I.      RELEVANT BACKGROUND

Cloaked in the prestige of his title of Chief Financial Officer, Hajjar embezzled more than $30 million from Alden.  *See* Dkt 1, at ¶7.  He used that money to enrich himself and to buy gifts for others known to the United States Attorney.  *Id*.  On May 5, 2021, Hajjar pled guilty to an Information charging him with wire fraud (18 U.S.C. § 1343), unlawful monetary transactions (18 U.S.C. § 1957), and filing a false tax return (26 U.S.C. § 7206 (1)).  The government relies on and incorporates herein the facts as set forth in the statement of offense conduct in paragraphs 7 through 18 of the Pre-Sentence Report ("PSR").

## II.     SENTENCING GUIDELINES

The parties and the United States Probation Office ("Probation") agree that Hajjar's Total Adjusted Offense Level is 29 and his Criminal History Category is I.  PSR ¶¶52, 57; *see* Dkt 3. Accordingly, the applicable GSR is 87-108 months incarceration.  The proposed plea in this case is a Rule 11(c)(1)(C) plea. *See* Dkt 3.  Should the Court accept the proposed plea, the parties agree on a term of incarceration that is not less than 48 months and not more than 74 months, 36 months of supervised release, a mandatory special assessment of $300, forfeiture, and restitution.

## III.    SENTENCING RECOMMENDATION

Each of the sentencing factors set forth in 18 U.S.C. § 3553(a) support the 74 month incarcerative sentence the government is requesting.

### i.      The Nature and Circumstances of the Offense Warrant a 74 month Sentence

The first factor that the Court must consider is "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1).  To state the obvious, the scope of Hajjar's embezzlement is staggering — thirty million dollars is an unfathomable amount of money to most people.  His fraud was also personal.  Over a period of years, Hajjar repeatedly violated the most basic duties of loyalty and honesty entrusted to him by Alden.  At the expense of the company and the honest

2

workers it employed, Hajjar enriched himself.  He did not steal in order to support an addiction or to repay financial debts (although neither would excuse his conduct).  Hajjar abused and exploited the trust Alden placed in him to fatten his own piggy bank and to support his shockingly opulent lifestyle, exemplified by the ultimate status symbol—a Nantucket beach house.  Put simply, his crime was fueled by greed.

Notably, this was also not an isolated crime of opportunity.  To the contrary, Hajjar engaged in a sustained pattern of criminal conduct and concealment, which makes it inherently more serious.  The defendant's theft stopped because he was caught, not because he faced a crisis of conscience.  More broadly, Hajjar injured the United States' tax system, which relies on its citizens and residents to report completely and honestly all taxes they owe, from whatever source derived.  Hajjar failed to do so at the expense of hardworking taxpayers who pay their fair share of taxes as the law requires.  This insidious fraud warrants a sentence of 74 months -- the high end of the C plea range.

      ii.     The Defendant's History and Characteristics Weigh in Favor of the Government's Requested Sentence

Hajjar, through his background and higher education, has had more advantages than most defendants who appear before this Court.  As Hajjar was perpetuating his scheme, he was already earning a significant six-figure income.  This alone is a privileged position.  Equally important is the fact that Hajjar used his education and his expertise to effectuate the fraud and inherently, to deflect suspicion.  This weighs in favor of the government's requested sentence under the plea agreement.

      iii.    A Sentence of 74 months Reflects the Seriousness of the Offenses, Promotes Respect for the Law, and Provides Adequate Punishment

A sentence at the high end of the range agreed to by the parties is also necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and serve

general deterrence.  *See* 18 U.S.C. § 3553(a)(2)(A).  The defendant in this case has undoubtedly been the subject of public scrutiny.  But neither reputational harm nor the financial consequences he will face as a result of the restitution and forfeiture imposed in this case promote respect for the law.  They are not adequate substitutes for meaningful punishment.  The First Circuit has recognized that "it is impermissible for a court to impose a lighter sentence on white-collar defendants than on blue-collar defendants because it reasons that white-collar offenders suffer greater reputational harm or have more to lose by conviction."  *United States v. Prosperi*, 686 F.3d 32, 47 (1st Cir. 2012); *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (noting the desirability of minimizing "discrepancies between white- and blue-collar offenses"); *see also United States v. Stall*, 581 F.3d 276, 286 (6th Cir. 2009) ("We do not believe criminals with privileged backgrounds are more entitled to leniency than those who have nothing left to lose.").

Criminal tax prosecutions like this one serve not only to punish the violators, but also to promote respect for the law.  *Bull v. United States*, 295 U.S. 247, 259 (1935)("[T]axes are the lifeblood of government, and their prompt and certain availability an impervious need.").  Strong enforcement is necessary to encourage all taxpayers to pay their required share of taxes, and to foster public confidence in the tax system.  Recent data indicates a voluntary tax compliance rate of approximately 83.6%.  *See* Internal Revenue Service, Tax Gap Estimates for Tax Years 2011-2013, *available at*: https://www.irs.gov/statistics /irs-the-tax-gap.  This means that while many individuals comply with the law; many others, like the defendant, dodge their taxpaying obligations.  This comes at a massive cost.  The "gross tax gap" is estimated to be about $441 billion annually.  *Id.*  Placing the defendant's disregard for his tax obligations into this larger context demonstrates the seriousness of his offenses and the need to promote respect for the law.

Although the defendant's immediate acceptance of responsibility, lack of criminal history, and otherwise law-abiding life indicate that specific deterrence is not a significant factor here, general deterrence is critical.  The First Circuit has recognized that the concept of general deterrence carries particular import in arriving at the appropriate sentence in white-collar and fraud cases.  *Mueffelman*, 470 F.3d at 40.  Failure to sentence Hajjar to a substantial term of incarceration in this case would send the wrong message: "that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty."  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).  Absent a substantial period of imprisonment, others inclined to engage in this sort of conduct may decide that committing a similar crime is worth the risk and resulting consequences.  The government recognizes that a sentence at the top of the C plea range – 74 months – is undoubtedly significant for a first-time offender.  However, it clearly reflects seriousness of Hajjar's calculated fraud scheme, promotes respect for the law, and serves as a general deterrent.  It is the appropriate sentence in this case.

IV.     **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court accept Hajjar's guilty plea and impose a sentence of 74 months incarceration, followed by 36 months of supervised release, forfeiture in the amount of $27,300,552.67, restitution of $33,962,880.70, and a $300 special assessment.  The government's requested sentence, although significant, falls below Hajjar's advisory GSR.  It is sufficient, but not greater than necessary, to reflect the seriousness of the offense, history and characteristics of the defendant, promote respect for the law, provide just punishment, and afford adequate deterrence.  Anything less would be insufficient to reflect the scale of the loss and severity of the harm caused by the defendant.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

Date: September 9, 2021            By:    /s/ *Mackenzie A. Queenin*
                                          Mackenzie A. Queenin
                                          Assistant United States Attorney
                                          United States Attorney's Office
                                          One Courthouse Way
                                          Boston, MA 02210
                                          617-748-3338

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                                            /s/ *Mackenzie A. Queenin*
                                                                             Mackenzie A. Queenin
                                                                               Assistant United States Attorney

Date: September 9, 2021